UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---

Aaron Olson,

             Plaintiff,

      v.

James Kambiri, et al,

             Defendants.

No. 13-cv-1777 (DWF/LIB)

**ORDER AND
REPORT AND RECOMMENDATION**

---

This matter came before the undersigned United States Magistrate Judge upon the State Defendants' Motion to Dismiss, [Docket No. 11]; upon the County Defendants' Motion to Dismiss, [Docket No. 16]; upon Plaintiff's Motion for Leave to Amend Complaint, [Docket No. 38]; and upon Plaintiff's Motion for Leave to File a Third Amend Complaint, [Docket No. 39]. The case has been referred to the undersigned Magistrate Judge for a report and recommendation, (Order [Docket No. 10] (referring all dispositive and non-dispositive motions)), pursuant to Title 28 U.S.C. § 636 and Local Rule 72.1.

Upon filing his Motion for Leave to File a Third Amended Complaint, Plaintiff thereby withdrew his Motion for Leave to Amend Complaint, [Docket No. 38], which may be terminated. (See Mot. Leave to File 3d Am. Compl. [Docket No. 39], at 2 ("Plaintiff then asks this Court to disregard his proposed Second Amended Complaint drafts.")).[1]

For the reasons discussed below, this Court recommends that both the State Defendants' Motion to Dismiss, [Docket No. 11], and the County Defendants' Motion to Dismiss, [Docket No. 16], be **GRANTED**, and that Plaintiff's claims against the State Defendants and the County

---

[1] By withdrawing his Motion for Leave to Amend Complaint, [Docket No. 38], Plaintiff rendered his Proposed Second Amended Complaint a nullity, and there is no Second Amended Complaint in this case. Consequently, Plaintiff's Motion for Leave to File a Third Amended Complaint, [Docket No. 39], and his Proposed Amended Complaint itself, [Docket No. 39-1], are misnamed. Nonetheless, for the sake of consistency, the Court refers to these documents using the numbering and the style that Plaintiff has attached to them.

Defendants be **DISMISSED**.  Additionally, the Court Orders that Plaintiff's Motion for Leave to File a Third Amended Complaint, [Docket No. 39], be **DENIED**.

## I.      BACKGROUND

Aaron Olson ("Plaintiff"), proceeding *pro se*, initiated this civil rights action on or about July 8, 2013, by filing his Complaint, [Docket No. 1], and an Application to Proceed *In Forma Pauperis* ("IFP"), [Docket No. 2].  The Court instructed Plaintiff to file an Amended Complaint to remedy certain deficiencies in his original Complaint.  (Order [Docket No. 3]).  Plaintiff complied on or about July 17, 2013, by filing his Amended Complaint, [Docket No. 5], which is the operative complaint in this case.  Subsequently, the Court granted his IFP Application. (Order [Docket No. 6]).

In his Amended Complaint, names three groups of defendants: Ramsey County (the "County") and James Kabiri ("Defendant Kambiri") (together, the "County Defendants"); the State of Minnesota (the "State") and Minnesota Attorney General Lori Swanson ("Defendant General Swanson") (together, the "State Defendants"); and the U.S. State Department ("Defendant State Department") and Secretary of State John Kerry ("Defendant Secretary Kerry") (together, the "Federal Defendants").[2]  (See Am. Compl. [Docket No. 5]).  Plaintiff generally alleges that Defendants' actions, which resulted in his being ineligible to obtain a passport, violated his right to due process and violated the Americans with Disabilities Act (the "ADA").  Id.; see also Part II.B, infra.

On October 2, 2013, the State and County Defendants made the present Motions, [Docket Nos. 11, 16], which were set on for hearing on December 10, 2013.  Plaintiff subsequently

---

[2] On April 4, 2014, the Federal Defendants made their Motion to Dismiss and for Summary Judgment, [Docket No. 52], which is scheduled for a hearing before this Court on June 9, 2014.

sought a continuance of both his response deadline and the motion hearing date.  (Letters to M.J. [Docket Nos. 25, 27]).  The Court rescheduled the hearing for January 27, 2013, (Order [Docket No. 26]), extended Plaintiff's deadline to respond to the Motions until December 30, 2013, (Order [Docket No. 29]).

Plaintiff did not directly respond to either of these Motions; however, on or about December 27 Plaintiff made his Motions to Amend Complaint, [Docket No. 38], which he withdrew on or about December 30, 2013, in favor of his Motion for Leave to File a Third Amended Complaint, [Docket No. 39].  The State Defendants filed their Response, [Docket No. 41], on January 10, 2014; the County Defendants did not respond to Plaintiff's motions to amend.

## II.    FACTS[3]

### A.  Plaintiff's Child Support Obligations and his Disability

Plaintiff's initial child support hearing was scheduled for January 30, 2006; he did not attend the hearing, and he was not represented by counsel.  (Aff. Sandvig, Ex. 1 [Docket No. 18-1], at 7).  On January 31, 2006, the Child Support Magistrate entered an Order that Plaintiff pay child support in the amount of $197.00 per month.[4]  (Id. at 7-13).  Subsequently, on May 14, 2006, Ramsey County Child Support and Collections advised Plaintiff that he was in arrears in the amount of $593.94.  (Aff. Sandvig, Ex. 2 [Docket No. 18-1], at 15-16).  A subsequent notice,

---

[3] When deciding a motion to dismiss, the Court considers "the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint." PureChoice, Inc. v. Macke, 2007 U.S. Dist. LEXIS 50284, at *13 (D. Minn. July 10, 2007) (Frank, J.) (citing Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999)).

[4] Subsequently, on March 26, 2006, the court issued an Amended Order; however, for purposes of the present action, the substance remained unchanged.  (Aff. Sandvig, Ex. 1 [Docket No. 18-1], at 2-3).  The County Defendants additionally assert that Plaintiff's assessment was increased to $205.00 per month pursuant to a cost-of-living increase on May 1, 2008, and again to $225.00 per month on May 1, 2012; and also assert that Plaintiff has not made a single payment of child support.  (Cnty. Defs.' Mem. [Docket No. 17], at 5).  However, neither of these statements is demonstrated by evidence in the record.

mailed during the week of September 25, 2006, advised Plaintiff that if his arrearage exceeded $2,500.00, the U.S. State Department might refuse to issue him a passport.  (Aff. Sandvig, Ex. 3 [Docket No. 18-1], at 18-19).

Each month, Plaintiff was sent a statement showing his total child support due, minimum due, and due date.  (Examples at Aff. Sandvig, Ex. 4 [Docket No. 18-2], at 2-7).  Over the years, Plaintiff has repeatedly sought reductions in his child support obligation.  (See Aff. Sandvig Ex. 5 [Docket No. 18-2], at 9-11 (Oct. 5, 2007, Order Denying Motion to Modify Support); Ex. 6 [Docket No. 18-2], at 17-18 (Mar. 10, 2008, Order Denying Motion to Modify Support); Ex. 8 [Docket No. 18-3] (the "July 2, 2010, State Court Order"), at 9-13 (July 2, 2010, Order Establishing Payment Agreement and Denying Motion to Modify Support).  The July 2, 2010, State Court Order specifically found that, at that time, Plaintiff owed child support arrearages totaling $10,202.68, and that based on that arrearage, the County employed various enforcement remedies against Plaintiff; including the "Passport Denial Program."  (July 2, 2010, State Court Order [Docket No. 18-3], at 11).

In the meantime, Plaintiff had applied for Social Security disability benefits.  The July 2, 2010, State Court Order states that Plaintiff had advised the court that the Social Security Administration had determined that he was eligible for disability benefits.  (Id. at 12).  However, the State Court also observed that Plaintiff provided no evidence of any such determination, and that Plaintiff, himself, did not know whether those benefits were Retirement, Survivors, and Disability Insurance ("RSDI") benefits, or Supplemental Security Income ("SSI") benefits.  (Id.). The court noted that the distinction was material because "RSDI benefits would be gross income for child support purposes and [Plaintiff] may have a responsibility to pay child support or make a payment toward arrears."  (Id. at 12-13).  Consequently, the court denied Plaintiff's motion to

4

modify his child support obligation.  (Id. at 13).

Subsequently, Plaintiff began receiving SSI benefits on January 1, 2012.  (Aff. Sandvig, Ex. 9 [Docket No. 18-3], at 17-19).  On June 2, 2012, the Social Security Administration granted Plaintiff retroactive disability and paid him a lump sum of $10,094.96.  (Id. at 17).  On September 17, 2012, upon learning of Plaintiff's disability, the County on its own initiative made a motion to amend his child support obligation, voluntarily choosing not to collect some $6,033.59 in fees that were owed to the County and/or the State.  (Aff. Sandvig, Ex. 10 [Docket No. 18-4], at 2-11 (motion and supporting documents)).[5]  That motion was granted on November 26, 2012.  (Aff. Sandvig, Ex. 11 [Docket No. 18-4], at 17-19 (order)).  However, the State court subsequently, on July 8, 2013, denied Plaintiff's motion to forgive the arrears he owed to the child's mother on the grounds that "[t]he Court is legally unable to retroactively modify child support," and therefore, "the court cannot grant the relief requested."  (Aff. Sandvig, Ex. 12 [Docket No. 18-4], at 23-24).

### B.  Plaintiff's Factual Allegations and his Claims

On August 16, 2012, Plaintiff spoke with Defendant Kambiri, who informed Plaintiff that he had been charged child support arrearages during the period of 2007 to 2010.  (Am. Compl. [Docket No. 5], at ¶ 1).  Defendant Kambiri allegedly told Plaintiff that any change in his child support obligation could only be made by order of Ramsey County Family Court.  (Id.).  Plaintiff sought relief in the Ramsey County Family Court, but on July 8, 2013, that court held that it lacked the authority to modify Plaintiff's child support arrears.  (Id. at ¶ 2; see also Aff. Sandvig, Ex. 12 [Docket No. 18-4], at 23-24).  Plaintiff alleges that Defendant Kambiri "mislead[]" him into believing that the Ramsey County Family Court could reduce his child support obligation. (Am. Compl. [Docket No. 5], at ¶ 6).

---

[5] At that time, Plaintiff owed some $10,160.50 to the child's mother.  (Aff. Sandvig, Ex. 10 [Docket No. 18-4], at 8).

Additionally, at some time between 2007 and 2010, the County Defendants advised the State of Plaintiff's child support arrearages, and the State subsequently advised the Federal Defendants, who suspended Plaintiff's passport rights. (Id. at ¶ 3). Plaintiff also alleges that the County Defendants "kept Plaintiff's Minnesota driver's license in suspension from 2007-2010, while at the very least knowing he was applying for SSI, and as late as 2012, after clearly knowing he was receiving SSI, creating a host of problems for Plaintiff, mostly in the form of traffic tickets and mental anguish." (Id. at ¶ 6).

Reading Plaintiff's Amended Complaint liberally,[6] the Court construes it as containing the following claims against the County Defendants:

- A 42 U.S.C. § 1983 claim specifically against Defendant Kambiri alleging that the deprivation of his ability to obtain a passport without first affording him a hearing was a violation of his right to due process;

- An ADA claim against Defendant Kambiri generally alleging "discriminatory acts against the disabled"; and

- A state-law claim against both Defendant Kambiri and the County for infliction of emotional distress.[7]

(Am. Compl. [Docket No. 5], at ¶ 4,¶ 6). Plaintiff makes no specific claims against the State Defendants; however, he generally seeks an injunction barring all of the Defendants, including the State Defendants, from interfering with his right to obtain a

---

[6] Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("document[s] filed pro se [are] 'to be liberally construed'") (quoting Estelle v. Gamble, 429 U.S. 97, 104-05 (1976)).

[7] Plaintiff's claim alleging infliction of emotional distress appears to allege both intentional infliction of emotional distress, (Am. Compl. [Docket No. 5], at ¶ 6 (alleging that the County Defendants' "behavior was entered into for the sole purpose of inflicting emotional distress on Plaintiff"), and also, negligent infliction of emotional distress, Id. (describing the claim as one for "[n]egligence," and alleging that the County Defendants "breach[ed] . . . the standard of care Plaintiff should have received"). However, whether this claim is properly brought as a negligence tort or an intentional tort is not material to the present Report and Recommendation.

passport until he is allowed a hearing on the matter.  (<u>Id.</u> at ¶ 5).[8]  In addition to seeking

money damages from the County Defendants for his 42 U.S.C. § 1983 claim and his state

law claim, (<u>Id.</u> at ¶ 4, ¶ 6), Plaintiff also generally seeks an injunction barring all of the

Defendants from interfering with his right to obtain a passport until he is allowed a

hearing on the matter.  (<u>Id.</u> at ¶ 5).[9]


## III.    STATE DEFENDANTS' MOTION TO DISMISS [Docket No. 11]

### A. Plaintiff voluntarily dismissed his claims against Defendant General Swanson.

Initially, the Court observes that Plaintiff, at the January 27, 2014, motions hearing,

acknowledged he was voluntarily dismissing his claims against Defendant Minnesota Attorney

General Swanson, which is consistent with his failure to name her as a defendant, or to assert any

---

[8] With regard to the Federal Defendants, Plaintiff alleges the following claims:
- A <u>Bivens</u> claim alleging that deprivation of his ability to obtain a passport without first affording him a hearing was a violation of his right to due process; and
- An ADA claim, alleging that "it is a violation of the reasonable accommodations provision under the ADA to hold Plaintiff to strict and permanent procedural deadlines for arguing against child-support measures while Plaintiff is disabled."

(Am. Compl. [Docket No. 5], at ¶ 3, ¶ 5).

[9] Plaintiff also asks, in the alternative, that this Court "accept this Complaint as a Petition for Habeas Corpus relief, as the unresolved issue of child support arrears continues to subject Plaintiff to substantial loss of liberty in the form of passport revocation and places Plaintiff within the 'custody' of the U.S. Secretary of State, severely limiting his movements protected under the 5th Amendment of the United States Constitution."  (Am. Compl. [Docket No. 5], at ¶ 7).

   This District has held that a person subject to the Federal government's child-support-related passport restrictions is not "in custody" for purposes of habeas corpus jurisdiction.  <u>Risenhoover v. Wash. Cnty. Cmty. Servs.</u>, 545 F. Supp. 2d 885, 888-89 (D. Minn. 2007) (Montgomery, J.).  Accordingly, this Court **does not** construe Plaintiff's Amended Complaint as a petition for habeas corpus.

   Additionally, the Court observes that Plaintiff made similar claims in two previous Federal actions:
- In November 2012, Plaintiff filed his Complaint in <u>Olson v. Ramsey County</u>, No. 12-cv-2825 (MJD/TNL), in which he alleged, *inter alia*, that Ramsey County had refused to schedule hearings closer to him as an accommodation to his disabled status, and also raised the same passport-related claims that he makes in the present lawsuit.  Plaintiff's complaint in that case was summarily dismissed on July 16, 2013, for failure to state a claim upon which relief could be granted.  <u>Id.</u>, 2013 U.S. Dist. LEXIS 99876 (D. Minn. Jan. 4, 2013) (Leung, M.J.), <u>adopted by</u> 2013 U.S. Dist. LEXIS 98972 (D. Minn. July 16, 2013).
- Also in November 2012, Plaintiff filed a Petition for Habeas Corpus in <u>Olson v. Washington County</u>, No. 12-cv-2807 (MJD/AJB), related to his arrest for Depriving Another of Custodial or Parental Rights in violation of Minn. Stat. § 609.26.  That petition was denied and the case dismissed because Plaintiff had not exhausted his state court remedies.  (Report & Recommendation [Docket No. 10]; Order Adopting R&R [Docket No. 16]; 8th Cir. Judgment [Docket No. 23]).

Plaintiff acknowledges both of these actions in his present Amended Complaint.  (<u>See</u> Docket No. 5, at 7).

factual allegations concerning her or any claims against her, in his Proposed Third Amended

Complaint.  (See Proposed 3d Am. Compl. [Docket No. 39-1]).  Consequently, the Court

recommends that Plaintiff's claims against Defendant Minnesota Attorney General Lori Swanson

be **DISMISSED** on the grounds that Plaintiff is no longer pursuing any claim against her.

Additionally, for the reasons set forth in Part III.B, infra, the Court recommends that the

dismissal be **with prejudice**.

**B.  Plaintiff's claims against the State Defendants are barred by sovereign immunity and the Rooker-Feldman doctrine.**

Plaintiff alleges no specific claims against the State Defendants.  Nevertheless, Plaintiff

appears to seek relief as to the State Defendants, in that he generally seeks an injunction barring

all of the Defendants, including the State Defendants, from interfering with his right to obtain a

passport until he is allowed a hearing on the matter.  (Am. Compl. [Docket No. 5], at ¶ 5).

"The Eleventh Amendment immunizes an unconsenting State from damage actions

brought in federal court, except when Congress has abrogated that immunity for a particular

federal cause of action."  Hadley v. N. Ark. Cmty. Technical Coll., 76 F.3d 1437, 1438 (8th Cir.

1996) (citations omitted).  Additionally, the U.S. Supreme Court has expressly held that "the

Eleventh Amendment by its terms clearly applies to a suit [against a State] seeking an

injunction."  Cory v. White, 457 U.S. 85, 90-91 (1982).  These prohibitions also extend to suit

against Defendant Swanson, the Minnesota Attorney General, because a suit against a public

employee in that person's official capacity is merely a suit against the public employer.  Johnson

v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999) (citing Kentucky v. Graham, 473

U.S. 159, 165 (1985)).

In the present case, Plaintiff does not argue that the State Defendants have waived their

sovereign immunity, but rather, he argues generally that Congress, in enacting the ADA,

8

abrogated state sovereign immunity for purposes of ADA claims, citing Tennessee v. Lane, 541

U.S. 509 (2004). However, Plaintiff asserts no cognizable ADA claim against the State

Defendants. Even reading Plaintiff's Amended Complaint liberally,[10] he asserts no specific

ADA claim against the State Defendants. Therefore, any provision of the ADA that would even

arguably abrogate the sovereign immunity of the States Defendants would be inapplicable to

Plaintiff's present case.

Additionally, the relief that Plaintiff seeks with regard to the State Defendants is barred

by the Rooker-Feldman doctrine.[11] The only remedy that Plaintiff seeks against the State

Defendants is "a federal injunction against . . . their use of passport revocation and other child-

support enforcement penalties against Plaintiff until Plaintiff has had an opportunity to make his

disability arguments in federal court." (Am. Compl. [Docket No. 5], at 5). However, the

Minnesota state courts already have ruled that the child support arrearage that Plaintiff owes to

the child's mother cannot be set aside. (Aff. Sandvig, Ex. 12 [Docket No. 18-4], at 23-24).[12]

---

[10] See fn.3, supra.

[11] Named for the U.S. Supreme Court's decisions in Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983), the Rooker-Feldman doctrine holds that, "with the exception of habeas corpus petitions, lower federal courts lack subject matter jurisdiction over challenges to state court judgments." Lemonds v. St. Louis County, 222 F.3d 488, 492-93 (8th Cir. 2000).

[12] Additionally, to the extent that Plaintiff generally alleges that the State's program of reporting child support arrearages to the Federal Defendants is unconstitutional, this District is among the Federal courts that have upheld the constitutionality of this statutory scheme. Federal law provides:
    A State plan for child and spousal support must—
        (31) provide that the State agency will have in effect a procedure for certifying to the Secretary, for purposes of the procedure under section 652(k) of this title, determinations that individuals owe arrearages of child support in an amount exceeding $2,500, under which procedure—
            (A) each individual concerned is afforded notice of such determination and the consequences thereof, and an opportunity to contest the determination; and
            (B) the certification by the State agency is furnished to the Secretary in such format, and accompanied by such supporting documentation, as the Secretary may require;
42 U.S.C. § 654(31). Additionally, 42 U.S.C. § 652(k) requires that the Secretary of State, upon receiving a certification pursuant to § 654(31), "shall . . . (1) refuse to issue a passport to such individual, and may revoke, restrict, or limit a passport issued previously to such individual." Finally, federal regulations require that each state have an "an administrative complaint procedure" with regard to § 654(31) determinations. 45 C.F.R. § 303.35. This District has held that "[t]hese procedures satisfy procedural due process." Risenhoover v. Wash. Cnty. Cmty. Servs., 545 F. Supp. 2d 885, 890 (D. Minn. 2007) (Montgomery, J.) (citing Eunique v. Powell, 302 F.3d 971 (9th Cir. 2002); Weinstein v. Albright, 261 F.3d 127 (2d Cir. 2001)).

The U.S. District Court for the District of Nebraska faced a similar scenario in Perryman v. Health & Human Services.  2011 U.S. Dist. LEXIS 70367 (D. Neb. June 28, 2011).  The plaintiff in Perryman alleged that he was denied a passport because he was in arrears on his child support payments, and he asked the court, *inter alia*, "to suspend his child support arrearage so he may obtain a passport."  Id. at *1, *5 (citation to docket record omitted).  The court concluded that it could not give the plaintiff the remedy he sought because of the Rooker-Feldman doctrine:

> In fact, federal district courts do not have jurisdiction "over challenges to state-court decisions . . . even if those challenges allege that the state court's action was unconstitutional."  Feldman, 460 U.S. at 486; see also Ballinger v. Culotta, 322 F.3d 546, 548-49 (8th Cir. 2003) (dismissing claims under Rooker-Feldman doctrine where the relief requested in the complaint would effectively reverse or undermine the state court decision or void its ruling and noting that "[f]ederal district courts thus may not 'exercis[e] jurisdiction over general constitutional claims that are 'inextricably intertwined' with specific claims already adjudicated in state court'" (citation omitted)).  Stated simply, a federal district court does not possess authority in a civil rights case to review or alter final judgments of a state court judicial proceeding.  This court cannot provide Plaintiff with the relief he requests.

Perryman, 2011 U.S. Dist. LEXIS 70367, at *5-6.  Likewise, under the Rooker-Feldman doctrine, this Court lacks subject matter jurisdiction to reverse the Minnesota state court's decision with regard to Plaintiff's child support arrearage.  Were this Court to enjoin the State of Minnesota from reporting Plaintiff's child support arrearage, it would undermine the Minnesota state court's decision, which this Court cannot do pursuant to the Rooker-Feldman doctrine.[13]

Because sovereign immunity and the Rooker-Feldman doctrine both act as absolute bars to Plaintiff's general claims for injunctive relief against the State Defendants, the Court recommends that the State Defendants' Motion to Dismiss, [Docket No. 11], be **GRANTED**, and that the State Defendants be **DISMISSED with prejudice** from this action.

---

[13] Plaintiff argues that if his claims are barred by the Rooker-Feldman doctrine, this Court should construe his Amended Complaint as a petition for habeas corpus.  (Am. Compl. [Docket No. 5], at 7).  As previously noted in fn.10, supra, this District has held that a person subject to the Federal government's child-support-related passport restrictions is not "in custody" for purposes of habeas corpus jurisdiction.

IV.     **COUNTY DEFENDANTS' MOTION TO DISMISS [Docket No. 16]**

The County Defendants move to dismiss the claims against them pursuant to Rule 12(b)(6), arguing that that Plaintiff has failed to state a claim against them upon which relief may be granted by this Court.

**A.  Standard of Review**

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  In addressing a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim, "we look only to the facts alleged in the complaint and construe those facts in the light most favorable to the plaintiff."  Riley v. St. Louis County of Mo., 153 F.3d 627, 629 (8th Cir. 1998) (citing Double D Spotting Serv., Inc. v. Supervalu, Inc., 136 F.3d 554, 556 (8th Cir. 1998)), cert. denied 525 U.S. 1178 (1999).  All reasonable inferences must be drawn in favor of the nonmoving party.  See Maki v. Allete, Inc., 383 F.3d 740, 742 (8th Cir. 2004).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulistic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations and citations omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged;" however, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), quoting Twombly, 550 U.S. at 556-67.  "While legal conclusions can provide the framework of a

complaint, they must be supported by factual allegations." Id. at 664.

**B. Discussion**

Plaintiff alleges two federal claims[14] against the County defendants, both directed at

Defendant Kambiri: (1) a 42 U.S.C. § 1983 claim alleging violation of his due process rights,[15]

in particular, the denial without a hearing of his liberty interest in international travel;[16] and (2)

an ADA claim, alleging both discrimination and failure to make reasonable accommodations.

**1.  Plaintiff's 42 U.S.C. § 1983 claim against Defendant Kambiri**

"To prevail on a Fourteenth Amendment . . . procedural due process claim, a plaintiff

'must first demonstrate that he was deprived of life, liberty or property by government action.'"

Triemert v. Wash. Cnty., No. 13-cv-1312 (PJS/JSM), 2013 U.S. Dist. LEXIS 179067, at *31-32

(D. Minn. Nov. 18, 2013) (Mayeron, M.J.) (quoting Orr v. Larkins, 610 F.3d 1032, 1034 (8th

Cir. 2010) (citing, in turn, Phillips v. Norris, 320 F.3d 844 (8th Cir. 2003))), adopted by 2013

U.S. Dist. LEXIS 178294 (D. Minn. Dec. 19, 2013) (Schiltz, J.); see also Wilkinson v. Austin,

545 U.S. 209, 221 (2003) ("The Fourteenth Amendment's Due Process Clause protects persons

against deprivations of life, liberty, or property; and those who seek to invoke its procedural

protection must establish that one of these interests is at stake.  A liberty interest may arise from

the Constitution itself, by reason of guarantees implicit in the word 'liberty,' . . . or it may arise

from an expectation or interest created by state laws or policies" (citations omitted)).

However, this District has recognized that, while persons generally have an unqualified

---

[14] Plaintiff's third claim against the County Defendants, for infliction of emotional distress, arises from State law.

[15] Plaintiff does not expressly state whether he believes the County Defendants violated his right to *procedural* due process, or to *substantive* due process.  However, because the actions that underlie Plaintiff's claims—namely, the County Defendants providing notice of Plaintiff's child support arrears without affording him a separate hearing—are purely procedural, the Court construes Plaintiff's claim as a procedural due process claim.

[16] Plaintiff describes this as a violation of his Fifth Amendment due process rights.  However, because Plaintiff asserts this claim against a county employee, and not a Federal official, this Court, reading Plaintiff's Amended Complaint liberally, see fn.3, supra, construes this as a claim that the County Defendants violated his Fourteenth Amendment right of procedural due process.

right to engage in domestic, interstate travel:

> "By contrast the 'right' of international travel has been considered to be no more than an aspect of the 'liberty' protected by the Due Process Clause of the Fifth Amendment . . . [and] can be regulated within the bounds of due process." Califano v. Torres, 435 U.S. 1, 5 n.6 (1978) (citations omitted).  Therefore, "legislation which is said to infringe the freedom to travel abroad is not to be judged by the same standard applied to laws that penalize the right of interstate travel . . . ."  Califano v. Aznavorian, 439 U.S. 170, 176-77 (1978).

Risenhoover v. Wash. Cnty. Cmty. Servs., 545 F. Supp. 2d 885, 890 (D. Minn. 2007)

(Montgomery, J.).

In the present case, the child support record detailed in Part II.A, supra, demonstrates that Plaintiff was (1) advised that he was in arrears on his child support obligation; (2) advised that if the arrears reached or exceeded $2,500.00, then his passport privileges might be revoked; (3) advised monthly of his child support arrearage, including when it exceeded the $2,500.00 threshold; and (4) allowed multiple opportunities to demonstrate why his child support obligation should be reduced.  His repeated requests for relief from the Minnesota state courts were denied because he offered no evidence as to why his obligation should be reduced.  In fact, the July 2, 2010, State Court Order specifically put Plaintiff on notice that the County Defendants had advised the Federal Defendants of Plaintiff's child support arrearage, which could affect his passport privileges.  When the County Defendants were ultimately notified that Plaintiff was receiving SSI benefits, they endeavored on their own initiative to modify Plaintiff's child support obligation and to cease collection efforts over those parts of his arrearage that could be attributed to fees owed to the County and/or the State.  Plaintiff was given all the process he was due.  Cf. Risenhoover v. Wash. Cnty. Cmty. Servs., 545 F. Supp. 2d 885, 891-92 (D. Minn. 2007) (Montgomery, J.) (where a county has certified that a person owes more than $2,500.00 in past due child support, "the availability of a post-certification administrative complaint procedure

13

provides Petitioner with adequate due process").[17]

Consequently, with regard to Plaintiff's 42 U.S.C. § 1983 claim against Defendant Kambiri, the Court recommends that the County Defendants' Motion to Dismiss, [Docket No. 16], be **GRANTED**.

### 2. Plaintiff's ADA claims against Defendant Kambiri

As relevant to Plaintiff's ADA claims in the present case, Title II of the ADA provides that:

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. Thus, "[t]o establish a violation of Title II of the ADA, [a plaintiff] must demonstrate: (1) that he is a qualified individual with a disability; (2) that he was excluded from participation in or denied the benefits of . . . services, programs, or activities, or was otherwise subjected to discrimination . . . ; and (3) that such exclusion, denial of benefits, or other discrimination was by reason of his disability."  Baribeau v. City of Minneapolis, 596 F.3d 465,

---

[17] Additionally, to the extent that Plaintiff also argues that the County Defendants violated his right to substantive due process by limiting his liberty interest in international travel, this District has squarely rejected that argument. In Risenhoover, supra, the petitioner challenged the very same statutory scheme under which the Plaintiff in the present case had his right to obtain a passport revoked.  The Hon. Ann D. Montgomery wrote:

> Petitioner also attempts to raise a substantive due process claim.  "The constitutional right of interstate travel is virtually unqualified.  By contrast the 'right' of international travel has been considered to be no more than an aspect of the 'liberty' protected by the Due Process Clause of the Fifth Amendment . . . [and] can be regulated within the bounds of due process."  Califano v. Torres, 435 U.S. 1, 5 n.6 (1978) (citations omitted).  Therefore, "legislation which is said to infringe the freedom to travel abroad is not to be judged by the same standard applied to laws that penalize the right of interstate travel . . . ."  Califano v. Aznavorian, 439 U.S. 170, 176-77 (1978). . . .
>
> Assuming arguendo that the Government needs an important reason to interfere with an individual's right to international travel, Congress has an important interest in parents paying child support "because unsupported children must often look to the public fisc, including the federal treasury, for financial sustenance."  Eunique, 302 F.3d at 975.  The passport denial statute is substantially related to this interest because it focuses the mind of a parent, such as Petitioner, who wishes to travel internationally "on a more important concern--the need to support one's children first."  Id.  Therefore, Petitioner's substantive due process challenge is rejected.

Risenhoover, 545 F. Supp. 2d at 890.

484 (8th Cir. 2010) (citing Layton v. Elder, 143 F.3d 469, 472 (8th Cir. 1998)).

In the present case, Plaintiff has not stated an ADA discrimination claim upon which relief can be granted, because he has alleged no facts whatsoever that would tend to demonstrate even the first element of such a claim: that he is a qualified individual with a disability.[18] Plaintiff only generally alleges that he is disabled, but alleges no specific facts describing his disability or asserting that he is a "qualified individual with a disability for purposes of the ADA.[19]   Additionally, Plaintiff only generally alleges that the County Defendants failed to provide reasonable accommodations for his disability by "hold[ing] Plaintiff to strict and permanent procedural deadlines for arguing against child-support measures while Plaintiff is disabled," but alleges no specific facts, such as what might constitute reasonable accommodations, or from whom he sought such accommodations.  This District has held that such general allegations are not sufficient to state a claim upon which relief can be granted:

> [T]he Complaint only alleges that [the plaintiff] is disabled, notified City personnel of his disability, and that the City did not provide "any accommodations as requested by [the plaintiff]."  These vague assertions are conclusory, utterly lacking in factual support, and thus are insufficient to survive a

---

[18] With regard to the ADA's provisions concerning public entities:
   The term "qualified individual with a disability" means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.
42 U.S.C. § 12131(2).

[19] Construing his Amended Complaint liberally, see fn.3, supra, Plaintiff appears to assert that the Social Security Administration's determination that he was disabled for purposes of receipt of Social Security (SSI) disability benefits also makes him a "qualified individual with a disability" for purposes of the ADA.  The Eighth Circuit, in the context of summary judgment motion, has rejected this argument:
   In . . . Robinson v. Neodata Servs., Inc., 94 F.3d 499, 501-02 (8th Cir. 1996), we rejected the ADA claimant's contention that her status as "totally disabled" for purposes of social security benefits proved as a matter of course that she was "disabled" under the ADA.  We observed, "Social Security determinations . . . are not synonymous with a determination of whether a plaintiff is a 'qualified person' for purposes of the ADA.  At best, the Social Security determination was evidence for the trial court to consider in making its own independent determination."  Id. at 502 n.2 (citation omitted); see also Eback v. Chater, 94 F.3d 410, 412 (8th Cir. 1996) (quoting with approval a statement from the Associate Commissioner of Social Security declaring that "the ADA and the disability provisions of the Social Security Act have different purposes and have no direct relationship to each other").
Dush v. Appleton Elec. Co., 124 F.3d 957, 962 n.8 (8th Cir. 1997).

> motion to dismiss under Rule 12(b)(6).   There are no facts concerning the disability from which [the plaintiff] allegedly suffers, what benefit [the plaintiff] was denied, what reasonable accommodations he requested, to whom he made those requests, or that he was even discriminated against because of his disability. Rule 12(b)(6) requires more than mere labels and conclusions.  Iqbal, 556 U.S. at 678.  Here, we do not even have "a formulaic recitation of the elements of a cause of action," let alone "sufficient factual matter . . . to state a claim to relief that is plausible on its face."  Id. (internal quotation marks omitted).  [The plaintiff]'s threadbare allegations do not state a claim under the ADA.

Smithrud v. City of Minneapolis, No. 10-cv-4451 (JNE/JSM), 2012 U.S. Dist. LEXIS 133770, at *21 (D. Minn. Sept. 18, 2012) (Ericksen, J.) (citation to the record omitted).

Furthermore, and more importantly, it essentially appears that the accommodation that Plaintiff seeks is that he be relieved of his obligation to comply with the state law requiring that he pay child support as a predicate to his applying for a U.S. passport.  Plaintiff cites to no authority whatsoever, and this Court has found none, that would suggest that the ADA serves to exempt even disabled persons from complying with otherwise valid state laws.

Consequently, with regard to Plaintiff's ADA claims against Defendant Kambiri, the Court recommends that the County Defendants' Motion to Dismiss, [Docket No. 16], be **GRANTED**.

### 3.  Plaintiff's state law claims for infliction of emotional distress

Additionally, having concluded that Plaintiff has failed to state a federal claim against the County Defendants upon which relief can be granted, pursuant to Rule 12(b)(6), the undersigned also recommends that the Court decline to entertain Plaintiff's state-law infliction of emotional distress claims.  If Plaintiff had pleaded an actionable federal civil rights claim, then his state law claim could perhaps be entertained under the federal supplemental jurisdiction statute, 28 U.S.C. § 1367.  However, the absence of an actionable federal claim effectively precludes a federal court from exercising supplemental jurisdiction over any possible state law claims.  See Stokes v.

Lokken, 644 F.2d 779, 785 (8th Cir. 1981) ("when federal claims are dismissed before trial, the normal practice is to dismiss pendent [state law] claims"); Johnson v. City of Shorewood, Minn., 360 F.3d 810, 819 (8th Cir.) ("[t]he Supreme Court has noted that 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims'") (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7 (1988); see also Thomas v. Dickel, 213 F.3d 1023, 1026 (8th Cir.) ("federal courts should 'exercise judicial restraint and avoid state law issues wherever possible'") (quoting Condor Corp. v. City of St. Paul, 912 F.2d 215, 220 (8th Cir.1990)).

In the present case, this Court is not the most suitable forum for adjudicating Plaintiff's state law claims. Therefore, the Court recommends that Plaintiff's infliction of emotional distress claims be dismissed without prejudice, so that he can still pursue those claims in state court to the extent that they have any merit.

Consequently, with regard to Plaintiff's state law claims for infliction of emotional distress, the Court recommends that the Court **not** exercise pendant jurisdiction, and that the County Defendants' Motion to Dismiss, [Docket No. 16], be **GRANTED**.

### 4.  Summary

For the reasons set forth in Parts IV.B.1-1, supra, this Court recommends that, with regard to Plaintiff's 42 U.S.C. § 1983 claim and his ADA claim, the County Defendants' Motion to Dismiss, [Docket No. 16], be **GRANTED**, such that Plaintiff's 42 U.S.C. § 1983 claim and his ADA claim against the County Defendants be **DISMISSED** **with** **prejudice** as contrary to law. Additionally, for the reasons set forth in Part IV.B.3, supra, this Court recommends that, with regard to Plaintiff's state law claims for infliction of emotional distress, the County

Defendants' Motion to Dismiss, [Docket No. 16], be **GRANTED**, such that Plaintiff's infliction of emotional distress claims against the County Defendants be **DISMISSED without prejudice**.

## V.   PLAINTIFF'S MOTION FOR LEAVE TO FILE A THIRD AMENDED COMPLAINT [Docket No. 39]

As previously noted, Plaintiff did not respond directly to either of the Motions to Dismiss, [Docket Nos. 11, 16], but rather, he instead moved to further amend his Amended Complaint.

### A.  Facts

Plaintiff's Proposed Third Amended Complaint, [Docket No. 39-1], differs somewhat[20] from the operative Amended Complaint, [Docket No. 5], with regard to the following new factual allegations:

- That Plaintiff never received letters informing him that his driver's license and/or passport might be suspended for child support arrears, (Proposed 3d Am. Compl. [Docket No. 39-1], at ¶ 6);

- That as of March 16, 2010, an assistant Ramsey County attorney was on notice that Plaintiff was receiving non-garnishable SSI payments, but refused to change his child support obligations, (Id. at ¶ 8);

---

[20] Additionally, the Proposed Third Amended Complaint supplements Plaintiff's existing negligence claim by alleging that the County Defendants, in briefing the present Motions, divulged Plaintiff's financial information and also divulged the name of the child at issue in the underlying child support dispute, which constitute further intentional infliction of emotional distress, (Proposed 3d Am. Compl. [Docket No. 39-1], at ¶¶ 15-16); and adds a new negligence claim against the County Defendants for referring Plaintiff to the Minnesota Department of Public Safety, where he had to wait on hold and ultimately hung up before talking with a live person, (Proposed 3d Am. Compl. [Docket No. 39-1], at ¶ 7).  Because the Court finds that Plaintiff's Proposed Third Amended Complaint fails to remedy the deficiencies in his federal law claims, and because the Court has already recommended that Plaintiff's state law claims be dismissed, the Court finds that these new factual allegations with regard to state law claims are not material to the determination of this Motion.

- That the County Defendants are misleading the Court when they say they did not know at the time of the July 2, 2010, Order whether Plaintiff was receiving RSDI or SSI benefits, (Id. at ¶ 17);

## B.  Standard of Review

If a party does not seek to amend their Complaint within the timing scope of Rule 15(a)(1), the party "may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).  Leave to amend should be granted "when justice so requires." Id.  The Supreme Court has explained the purposes of Rule 15(a) as follows:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.  In the absence of such an apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.—the leave sought should, as the rules require, be "freely given."

Foman v. Davis, 371 U.S. 178, 182 (1962).  Although "parties do not have an absolute right to amend their pleadings, even under this liberal standard," Sherman v. Winco Fireworks, Inc., 532 F.3d 709, 715 (8th Cir. 2008), the Court begins "with a presumption of liberality." DeRoche v. All Am. Bottling Corp., 38 F. Supp.2d 1102, 1106 (D. Minn. 1998).

An amendment is considered to be futile if "the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure." Cornelia I. Crowell GST Trust v. Possis Medical, Inc., 519 F.3d 778, 782 (8th Cir. 2008).  As such, an amendment to a pleading can be successfully challenged on the grounds of futility, if the claims created by the amendment would not withstand a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted.  See Humphreys v. Roche Biomedical Lab., Inc., 990 F.2d 1078, 1082 (8th Cir. 1993).

**C.  Discussion**

With regard to his claims against the State Defendants, Plaintiff's Proposed Third Amended Complaint, [Docket No. 39-1], does not materially differ from his operative Amended Complaint, [Docket No. 5].

With regard to his claims against the County Defendants, Plaintiff's Proposed Third Amended Complaint, [Docket No. 39-1], is futile because Plaintiff's new factual allegations fail to plausibly allege facts sufficient to state a claim upon which relief can be granted.

**1.  Plaintiff's allegation that he did not receive notice about the passport revocation program**

Plaintiff alleges in his Proposed Third Amended Complaint that he never received notices mailed by the County Defendants informing him that his driver's license and passport privileges might be suspended as a result of his child support arrearage.  (Proposed 3d Am. Compl. [Docket No. 39-1], at ¶ 6).

Plaintiff does not dispute the County Defendants' assertion that they mailed such notice to him; rather, he merely asserts in a conclusory manner that he never received such notice. "'There is a presumption that a letter transmitted by mail was received by the addressee.  While the presumption is a rebuttable one it is a very strong presumption and can only be rebutted by specific facts . . . .'"  Stockton v. Northwest Airlines, Inc., 804 F. Supp. 2d 938, 946 (D. Minn. 2011) (Davis, C.J.) (quoting Kohler v. Anderson, 1993 U.S. App. LEXIS 1259, at *3-4 (8th Cir. unpub. Jan. 28, 1993) (internal quotations omitted)).  "'Denial of receipt does not, as a matter of law, rebut the presumption, but rather creates a question of fact.'"  Stockton, 804 F. Supp. 2d at 946 (quoting In re Am. Props., Inc., 30 B.R. 235, 238 (Bankr. D. Kan. 1983) (quoted in Kohler, 1993 U.S. App. LEXIS 1259, at *4)).

In his Proposed Third Amended Complaint, Plaintiff merely alleges, in a conclusory

manner, that he did not receive the notices mailed by the County Defendants.  However, he alleges no specific facts that would rebut the presumption that the notices were delivered, for example, that the notices were mailed to an incorrect address.  See Stockton, 804 F. Supp. 2d at 946 (citing In re Am. Props., 30 B.R. at 238).

Because Plaintiff has alleged no specific facts that would allow this Court to conclude that he did not receive notice that his child support arrearage could result in the suspension of his passport privileges, the Court concludes that allowing Plaintiff to further amend his present Amended Complaint to make additional factual allegations would be futile.

### 2. Plaintiff's allegation that the County Defendants were aware of his receipt of SSI disability benefits

Plaintiff alleges in his Proposed Third Amended Complaint that the County Defendants knew as early as March 16, 2010, that Plaintiff was receiving "ungarnishable Social Security benefits," and that the County has misrepresented to this Court what it knew about Plaintiff's Social Security benefits.  (Proposed 3d Am. Compl. [Docket No. 39-1], at ¶ 8, ¶ 17).

This Court cannot conclude that this assertion is "plausible on its face," Twombly, 550 U.S. at 570, when the claim is contradicted by the public record in Plaintiff's child support case. The July 2, 2010, State Court Order, by which Plaintiff's motion to modify his child support obligation was denied, contained the following finding of fact:

> 12.  [Plaintiff] requested that his ongoing child support obligation be currently set at $0.00.  [Plaintiff] stated that he did not want language in the Order that would permit Ramsey County to charge/reinstated [sic] child support.  [Plaintiff] stated that he has been found eligible for social security benefits.  [*Plaintiff*] *did not know whether he was eligible to receive RSDI or SSI benefits.  Additionally,* [*Plaintiff*] *did not bring any verification of the benefits*.

(July 2, 2010, State Court Order [Docket No. 18-3], at 12 (emphasis added)).  The Court finds Plaintiff's assertion that the County Defendants knew the particulars of Plaintiff's benefits to be

implausible when the public record shows that Plaintiff, himself, did not even then know those particulars.[21] Consequently, any amendment to Plaintiff's present Amended Complaint to allege these factual allegations would be futile.

Because the new factual allegations contained in Plaintiff's Proposed Third Amended Complaint, [Docket No. 39-1], are futile and would not change the Court's recommendations in the Report and Recommendation concerning the State Defendants' Motion to Dismiss, [Docket No. 10], and the County Defendants' Motion to Dismiss, [Docket No. 16], Plaintiff's Motion for Leave to File a Third Amended Complaint, [Docket No. 39], is **DENIED**.


## VI.    CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED**:

1.  That the State Defendants' Motion to Dismiss, [Docket No. 11], be **GRANTED**, and that Plaintiff's claims against the State of Minnesota and Minnesota Attorney General Lori Swanson be **DISMISSED <u>with</u> prejudice**, as set forth above;

2.  That the County Defendants' Motion to Dismiss, [Docket No. 16], be **GRANTED**, such that:

    a.  Plaintiff's federal claims against Defendant Kambiri pursuant to 42 U.S.C. § 1983 and the ADA be **DISMISSED <u>with</u> prejudice**; and

    b.  Plaintiff's state law claims for infliction of emotional distress against Ramsey County and James Kambiri be **DISMISSED without prejudice**, as set forth above.

---

[21] Additionally, it appears that, although Plaintiff was awarded retroactive SSI benefits going back to October 1, 2007, he did not actually begin receiving SSI benefits until January 1, 2012. (<u>See</u> Aff. Sandvig, Ex. 9 [Docket No. 18-3], at 17-19).

Additionally, based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

3.   That Plaintiff's Motion for Leave to Amend Complaint, [Docket No. 38], shall be **terminated as WITHDRAWN**, as set forth above; and

4.   That Plaintiff's Motion for Leave to File a Third Amended Complaint, [Docket No. 39], is **DENIED**, as set forth above.

Dated: April 21, 2014                                      /s/ Leo I. Brisbois_____
                                                           LEO I. BRISBOIS
                                                           United States Magistrate Judge

**N O T I C E**

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by May 5, 2014**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within **fourteen (14) days** of service thereof.  Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.